# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

In re: Royal Transport Express, LLC　§　　Case No. 19-43230
§　　(Chapter 11)
§
§

## ORDER APPROVING ADEQUATE PROTECTION STIPULATION BETWEEN SECURED CREDITOR BMO HARRIS BANK N.A. AND DEBTOR

On this date, the Court considered the Agreed Motion between Secured Creditor, BMO Harris Bank N.A. Royal Transport Express, LLC Inc. to approve the stipulation for adequate protection with BMO Harris Bank N.A. No objections having been filed, after notice and opportunity for hearing were afforded, and it appearing the Stipulation is beneficial for the parties, the Motion for Approval and Entry of Adequate Protection Stipulation filed by Creditor BMO Harris Bank N.A. on December 30, 2019 is hereby GRANTED so as to authorize payment of adequate protection payments by Debtor, Royal Transport Express, LLC to Creditor, BMO Harris Bank N.A. as specified in Exhibit "1" to BMO Harris Bank N.A.'s Motion for Approval and Entry of Adequate Protection Stipulation. A copy of Exhibit "1" is attached to this order and incorporated by referenced.

Signed on 1/17/2020

*Brenda T. Rhoades*　SR

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

APPROVED AS TO FORM ONLY:

*/s/Ammar Dadabhoy*_____
Ammar Dadabhoy
SBN:24088812
Wong Fleming
77 Sugar Creek Center Blvd., Suite 401, Sugar Land, Texas 77478
T: 281-340-2074
F: 866-240-0629
adadabhoy@wongfleming.com
Attorney for BMO Harris Bank N.A.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: Royal Transport Express, LLC | § § § § | Case No. 19-43230<br>(Chapter 11) |

## STIPULATION FOR ADEQUATE PROTECTION WITH BMO HARRIS BANK N.A.

Royal Transport Express, LLC ("Debtor") and BMO Harris Bank N.A. ("BHB") collectively hereby stipulate and agree as follows (this "Stipulation"):

### RECITALS

1. On June 22, 2018, Royal Transport Express, LLC ("Debtor") executed a Loan and Security Agreement ("Contract 1") with BHB, a copy of the Loan and Security Agreement is attached as **Exhibit A.** On June 22, 2018 Harpreet Singh executed a personal continuing guaranty personally guaranteeing Royal Transport Express, LLC's obligations to BHB (a copy of guaranty agreements attached as **Exhibit B** and incorporated by reference herein.)

2. On June 23, 2017, Debtor executed a Loan and Security Agreement ("Contract 2") with BHB, a true and correct copy of the Loan and Security Agreement is attached as **Exhibit C**. Additionally, on June 23, 2017 Harpreet Singh executed a personal guaranty guaranteeing Royal Transport Express, LLC's obligations to BHB. *See* **Exhibit D**.

3. On July 5, 2018, Debtor executed a Loan and Security Agreement ("Contract 3") with BHB, a true and correct copy of the Loan and Security Agreement is attached as **Exhibit E**. Additionally, on July 5, 2018 Harpreet Singh executed a personal guaranty guaranteeing Royal Transport Express, LLC's obligations to BHB. *See* **Exhibit F**.

4.

5

Exhibit "1"

5. To secure the payment of the indebtedness, the Debtor granted a security interest in the following to Creditor:

| Year | Manufacturer | Model | Description | Serial Number |
|---|---|---|---|---|
| 2014 | UTILITY | REFRIGERATED VANS | REFRIGERATED VANS 53" | 1UYVS2538EU759737 |
| 2013 | THERMO KING | SB 230 | SB 230 | 6001344583 |
| 2018 | UTILITY | REFRIGERATED VANS | REFRIGERATED VANS 53" | 1UYVS2534J2137206 |
| 2017 | THERMO KING | S-600 | S-600 | 6001241699 |
| 2019 | FREIGHTLINER | CASCADIA-SERIES | CASCADIA-SERIES CA12564SLP 125"BBC CONV CAB W/72"RR SLPR TRACTOR 6X4 | 3AKJHHDR1KSGE4785 |

6. Accordingly, Creditor has duly perfected its security interest in the collateral evidenced by the Certificate of Titles attached as **Exhibit G.**

7. Debtor filed a voluntary petition for relief under Title 11 U.S.C. Chapter 11 on December 2, 2019, staying actions as specified in § 362 of the code. This Court has jurisdiction over this matter by virtue of the jurisdiction conferred upon it under 28 U.S.C. § 157, which characterizes this matter as a "core proceeding" arising in a case under Title 11, United States Code.

8. Accordingly, Creditor has a claim in the amount of $228,345.92 as evidenced by Creditor's filed Proof of Claims 1-1, Proof of Claim 2-1 and Proof of Claim 3-1. *See also* **Exhibit H.**

9. Debtor has defaulted by failing to pay for the collateral as contracted under the agreements. *See* **Exhibit H**. Debtor is delinquent in the amount of $38,346.06.

6

Exhibit "1"

10. Debtor has requested that BHB allow Debtor to use the collateral during the pendency of its Chapter 11 case.

11. BHB has agreed to the Debtor's use of the collateral during the pendency of its Chapter 11 case subject to the following terms and conditions negotiated between BHB, the Count, and Debtor.

## AGREEMENT

NOW THEREFORE, in consideration of the terms, conditions and covenants in this Agreement, the parties agree and stipulate as follows:

12. **Use of the Collateral:** Subject to the terms and conditions set forth herein, BHB agrees to the Debtor's use of the collateral during the pendency of its Chapter 11 case.

13. **Adequate protection payments:** To compensate and protect BHB from diminution in the value of the Collateral resulting from the Debtor's use and retention thereof, Debtor shall make Adequate protection payments to BHB in the amount of 1.25% of the total debt ($2,854.32) beginning on January 1st and on the first day of each month thereafter until the earlier of (a) the Debtor's surrender of the Collateral in accordance with paragraph 18 below or (b) further order of the Bankruptcy Court. All adequate protection payments made pursuant hereto shall be made payable to BMO Harris Bank N.A. by wire as follows:

- BMO Harris Bank N.A. Bank Account Number 1824325, Bank Routing Code 071000288

14. Notwithstanding the foregoing, BHB does not agree that the adequate protection payments required herein adequately protect its interests in the Collateral and nothing in this Stipulation shall constitute a determination as to: (1) the adequate protection of BHB's interest in the collateral; or (2) any issues related thereto.

7

Exhibit "1"

15. **Maintenance and Inspection:** Debtor shall keep the Collateral in good and reasonable condition, shall perform regular maintenance on same in accordance with the Agreement, and, in any event, in accordance with commercially reasonable maintenance standards for the Collateral, and shall allow representatives of BHB to inspect the Collateral on reasonable notice to the Debtor.

16. **Insurance:** Debtor shall: (a) maintain insurance to fully insure the value of the Collateral; (b) name BHB as a co-insured and a loss payee under the relevant insurance policy or policies; and (c) provide BHB with any and all proof of insurance and notices under any applicable insurance policies.

17. **Amount of Claim:** Debtor agrees that BHB is owed the amount set forth in the above Recitals, without defense, set-off or counterclaim.

18. **Validity of Lien:** Debtor acknowledges and agrees that the liens and security interests held by BHB are valid, perfected, unavoidable, first-priority liens and security interests in the Collateral.

19. **Events of Default/Notice/Stay Relief:** The occurrence of any one or more of the following events shall constitute "Event of Default" under this Stipulation:

   a. Debtor fails to pay when due any adequate protection payment to BHB as required by this Stipulation and such payment failure is not cured within seven (7) calendar days after BHB (or its counsel) sends written notice of such failure in accordance with paragraph 22 of this agreement;

   b. Debtor fails to obtain and/or maintain insurance in an amount necessary to fully insure the Collateral and such insurance is not cured within five (5) calendar days

8

Exhibit "1"

    after BHB (or its counsel) sends written notice of such failure in accordance with paragraph 22 of this agreement;

  c. Debtor fails to maintain and use the Collateral in accordance with the Agreement and this Stipulation;

  d. The entry of an order converting this Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code;

  e. The termination, expiration, lapse, or reduction of insurance coverage on the collateral;

  f. Debtor attempts to modify this Stipulation without express written consent of BHB;

  g. The termination of the automatic stay by any other party claiming an interest in, and permitting that party to proceed against, any portion of the Collateral; or

  h. The Debtor fails to comply with any term or provision of the Stipulation

20. **Remedies:** Upon the occurrence of an Event of Default, the automatic stay pursuant to 11 U.S.C. § 362(d) shall be lifted and modified, without further notice or hearing and notwithstanding Rules 4001(a)(3) and 7062 of the Federal Rules of Bankruptcy Procedure, at which time the Debtor and any of its officers, employees, or other agents shall cooperate with BHB and turnover possession of the collateral, wherever it may be located, and neither Debtor not any of its officers, employees, or other agents shall impede BHB in its efforts to retrieve and dispose of the Collateral. Moreover, Debtor shall only have one (1) opportunity to cure any adequate protection payment Event of Default under paragraph 17(a) of this Agreement. In the event the Debtor fails to pay any adequate protection payment when due but has already cured such similar failure one (1) time within seven (7) calendar days after BHB (or its counsel) sends written notice of such failure in accordance with paragraph 22 of this agreement, the 7-calendar-day-cure

Exhibit "1"

opportunity shall no longer apply and any such adequate protection payment Event of Default shall result in the automatic stay pursuant to 11 U.S.C. § 362(d) being lifted and modified, without further notice or hearing notwithstanding Rules 4001(a)(3) and 7062 of the Federal Rules of Bankruptcy Procedure, at which time Debtor and any of its officers, employees, or other agents shall cooperate with BHB and turnover possession of the Collateral, wherever it may be located, and neither the Debtor nor any of its officers, employees or other agents shall impede BHB in its efforts to retrieve and dispose of the Collateral. In addition, Debtor shall only have one (1) opportunities to cure any insurance Event of Default under paragraph 17(b) of this Agreement. In the event the Debtor fails to maintain insurance coverage in an amount necessary to fully insure the Collateral but has already cured such similar failure one (1) time within five (5) calendar days after BHB (or its counsel) sends written notice of such failure in accordance with paragraph 22 of this agreement, the 5-calendar-day-cure opportunity shall no longer apply and any such insurance Event of Default shall result in the automatic stay pursuant to 11 U.S.C. § 362(d) being lifted and modified, without further notice or hearing notwithstanding Rules 4001(a)(3) and 7062 of the Federal Rules of Bankruptcy Procedure, at which time Debtor and any of its officers, employees, or other agents shall cooperate with BHB and turnover possession of the Collateral, wherever it may be located, and neither the Debtor nor any of its officers, employees or other agents shall impede BHB in its efforts to retrieve and dispose of the Collateral.

21. **Bankruptcy Court Order:** This Agreement shall become effective only upon the entry of an order by the Bankruptcy Court approving this Agreement. The Debtor agrees to promptly seek an order from the Bankruptcy Court approving the terms of this Agreement.

22. **No Surcharge:** The Debtor shall not cause any liens or claims to be placed against the Collateral unless otherwise provided by Court order. No costs and expenses of administration

Exhibit "1"

shall be imposed upon BHB or the Collateral under any chapter of the Bankruptcy Code, whether by means of a surcharge or otherwise.

23. **No Waiver:** Nothing in this Agreement shall be construed as a waiver, concession, or impairment (by implication or otherwise) of

    a. **BHB's right to pursue collection of default interest, late fees, attorneys' fees and costs, and any other amounts provided for by the Agreement and/or applicable law;**

    b. BHB's ability to seek and obtain a super priority claim under § 507(b) of the Bankruptcy Code against the bankruptcy estate to the extent that this Agreement fails to adequately protect BHB's interests and to the extent the value of the Collateral is diminished as a result of the operations of the Debtor or the Collateral;

    c. Any of BHB's rights against any third party's or any guarantor's of the Debtor's obligations to BHB under this Agreement or any security interests and/or liens held by BHB in ay assets of such third party; and

    d. BHB's rights under this Agreement or applicable law.

24. **Notice:** To be effective, notice of any adequate protection payment failure set forth in paragraph 17(a) or an insurance failure set forth in paragraph 17(b) shall be sent to Debtor's counsel, Eric A. Liepins, by e-mail to mailto:Eric@ealpc.com and shall be effective when sent.

25. **Binding Effect:** This agreement shall be binding upon the Debtor, its estate, any Chapter 11 trustee for the estate, any Chapter 7 trustee appointed after any conversion of the Bankruptcy case, any creditors committee, and all creditors and parties in interest.

26. **Representation/No Coercion:** The Debtor represents, warrants, and acknowledges that it has been represented by or has had the opportunity to be represented by legal counsel with

Exhibit "1"

the negotiation and documentation of this Agreement, that it has chosen to execute this Agreement of its own free will.

27.    **Drafting:** All parties thereto have contributed to the drafting of this Agreement and any ambiguities herein shall not be construed against any particular party.

28.    **Counterparts:** This agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but such counterparts shall together constitute one and the same Agreement.

29.    **Authority to Sign:** Each of the undersigned represent and warrant that they have the authority to bind the party or parties on whose behalf they are signing the terms and conditions of this Agreement.

30.    In the event the Debtor fails to comply with the adequate protection provisions granted herein, that BMO Harris Bank N.A., will advise counsel for debtor of such non-compliance and that the stay is terminated. For the purpose of this section, receipt by the Court's CM/ECF system of the Notice or by email shall be sufficient.

31.    In the event the automatic stay of § 362(a) is terminated as to BMO Harris Bank N.A., the stay shall terminate to permit BHB to exercise all rights and remedies available to it.

32.    If the property subject to the Motion is the subject of a sale by BMO Harris Bank N.A., then the proceeds of such sale shall be applied to amounts owed to BHB minus costs attributed to the sale.

12

Exhibit "1"