UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 19-43230 |
| | § | |
| ROYAL TRANSPORT EXPRESS, LLC | § | Chap. 11 |
| | § | |
| Debtor, | § | |
| | § | |

**IN SUPPORT OF MOTION FOR RELIEF**

I, _LeighAnn Bishop_, hereby state the following:

1. I am a _Corporate Paralegal_ for Transportation Alliance Bank, Inc. ("**TAB Bank**") and its successors and/or assignees and hereby make this Affidavit in such capacity.

2. TAB Bank is authorized to sue on its own behalf.

3. I am a custodian of records for TAB Bank. In the course of my employment, I have become familiar with the manner and method in which Transportation Alliance Bank, Inc. maintains its books and records in its regular course of business. Those books and records are managed by employees and agents whose duty it is to keep the books and records accurately and completely and to record each event or item at or near the time of the event or item so noted.

4. The following documents attached to TAB Bank's Motion to Lift Automatic Stay Against Property and Waiver of 30 Day Hearing Requirement (the "**Motion to Lift Stay**") are true and accurate copies of the originals thereof, which are kept by Transportation Alliance Bank, Inc. in the normal course of its business: (i) the Business Loan Agreement dated October 3, 2017 (the "**First Loan Agreement**"), by and between Royal Transport Express, Inc. (the "**Debtor**") and TAB Bank attached to Motion to Lift Stay as Exhibit A; (ii) the Promissory Note dated October 3, 2017 (the "**First Note**"), signed by Debtor in the original principal

1

amount of $132,242.36 attached to the Motion to Lift Stay as Exhibit B; (iii) the Commercial Security Agreement dated October 3, 2017 (the "**First Security Agreement**"), signed by Debtor attached to the Motion to Lift Stay as Exhibit C; (iv) the Agreement to Provide Insurance dated October 3, 2017 signed by Debtor (the "**First Insurance Agreement**"), a true and accurate copy of which is attached to the Motion to Lift Stay as Exhibit D; (v) the Texas Certificate of Title for the 2018 Freightliner CA125SLP Tractor – VIN 1FUGGLDR5JLGE4766 (the "**Truck 4766**") attached to the Motion to Lift Stay as Exhibit E; (vi) the Business Loan Agreement dated February 28, 2018 (the "**Second Loan Agreement**"), by and between TAB Bank and Debtor attached to the Motion to Lift Stay as Exhibit F; (vii) the Promissory Note dated February 28, 2018 (the "**Second Note**"), executed by Debtor in the original principal amount of $142,054.85 attached to the Motion to Lift Stay as Exhibit G; (viii) the Commercial Security Agreement dated February 28, 2018 (the "**Second Security Agreement**"), signed by Debtor attached to the Motion to Lift Stay as Exhibit H; (ix) Agreement to Provide Insurance dated February 28, 2018, signed by Debtor (the "**Second Insurance Agreement**"), a true and accurate copy of which is attached to the Motion to Lift Stay as Exhibit I and (x) the Texas Certificate of Title for the 2018 Freightliner PT126SLP Tractor – VIN 3AKJHHDR7JSJV9325 (the "**Truck 9325**") attached to the Motion to Lift Stay as Exhibit J.

5. TAB Bank extended a loan to Debtor, which is evidenced by, among other things, the First Loan Agreement, the First Note, the First Security Agreement, and the First Insurance Agreement.

6. Pursuant to the terms of the First Security Agreement, Debtor granted to TAB Bank a security interest in certain Collateral (as defined therein), including, without limitation, Truck

4766, as security for the payment and performance of the Debtor's obligations to TAB Bank, including, without limitation, the payment and performance of Debtor's obligations under the First Loan Agreement, the First Note, First Security Agreement, Second Loan Agreement, the Second Note, and Second Security Agreement. TAB Bank's security interest is perfected by a notation of TAB Bank's first lien position on the Truck 4766 Texas Certificate of Title.

7. TAB Bank also extended a loan to Debtor, which is evidenced by, among other things, the Second Loan Agreement, the Second Note, the Second Security Agreement, and the Second Insurance Agreement.

8. Pursuant to the terms of the Second Security Agreement, Debtor granted to TAB Bank a security interest in certain Collateral (as defined therein), including, without limitation, Truck 9325, as security for the payment and performance of the Debtor's obligations to TAB Bank, including, without limitation, the payment and performance of Debtor's obligations under the First Loan Agreement, the First Note, First Security Agreement, Second Loan Agreement, the Second Note, and Second Security Agreement. TAB Bank's security interest is perfected by a notation of TAB Bank's first lien position on the Truck 9325 Texas Certificate of Title.

9. Transportation Alliance Bank, Inc. is the holder of a secured claim against the Debtor as evidenced by the Proofs of Claim filed by TAB Bank in the captioned matter as Claim Nos. 7-1 and 8-1.

10. Debtor is in default under the First Loan Agreement, First Note, First Security Agreement, Second Loan Agreement, Second Note, and Second Security Agreement for, among other things, failing to pay the monthly payments when due thereunder.

11. As of December 2, 2019 (the "**Petition Date**"), the arrearage amount owed by Debtor to TAB Bank in connection with the First Loan Agreement, First Note, and First Security Agreement was $11,049.03.

12. As of the Petition Date, the total amount owed by Debtor to TAB Bank in connection with the First Loan Agreement, First Note, and First Security Agreement was $100,598.91.

13. As of the Petition Date, the arrearage amount owed by Debtor to TAB Bank in connection with the Second Loan Agreement, Second Note, and Second Security Agreement was $12,141.64.

14. As of the Petition Date, the total amount owed by Debtor to TAB Bank in connection with the Second Loan Agreement, Second Note, and Second Security Agreement was $121,319.08.

15. According to the NADA, a publication commonly relied upon by banks, insurance companies, government agencies, and dealers in determining the value of collateral, the retail market value for Truck 4766 is $86,250.

16. According to the NADA, a publication commonly relied upon by banks, insurance companies, government agencies, and dealers in determining the value of collateral, the retail market value for Truck 9325 is $86,250.

17. Transportation Alliance Bank, Inc. has had to retain counsel to represent it before this Court and is incurring legal expenses and attorney's fees for which it is entitled to reimbursement under the terms of the Agreement.

18. I declare that the foregoing facts are true and correct to the best of my knowledge.

19. Further your affiant saith not.

Dated: 1/17/20

_____
Name of Affiant:
Transportation Alliance Bank, Inc.

Subscribed and sworn to before me on January 17, 2020.

_____
Notary

DANELLE MUELLER
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp 06-07-2022
Commission # 700084